# United States Bankruptcy Court
### Northern District of California

In re Mountain Investments, LLC.          Case No. 16-50906
        Debtor


Chapter 11


## DEBTOR'S FOURTH AMENDED DISCLOSURE STATEMENT

### September 26, 2010

### *Table of Contents*

I.   INTRODUCTION ..................................................................................... 3
    A.    Purpose of This Document
    B.    Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing
    C.    Disclaimer

II. BACKGROUND ........................................................................................ 4
I.
    A.    Description and History of the Debtor's Business
    B.    Management of Debtor and Description of Insiders
    C.    Events Leading to Chapter 11 Filing
    D.    Significant Events During the Bankruptcy Case
    E.    Projected Recovery of Avoidable Transfers
    F.    Claims Objections
    G.    Current and Historical Financial Conditions
II.   SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS
    AND EQUITY INTERESTS ......................................................................... 6
    A.    What is the Purpose of the Plan of Reorganization?
    B.    Unclassified Claims
        1.    Administrative Expenses
        2.    Priority Tax Claims
    C.    Classes of Claims and Equity Interests
        1.    Classes of Secured Claims
        2.    Classes of Priority Unsecured Claims
        3.    Class of General Unsecured Claims
        4.    Class of Equity Interest Holders
    D.    Means of Implementing the Plan
        1.    Source of Payments
        2.    Post-confirmation Management
    E.    Risk Factors and Default Provisions
    F.    Executory Contracts and Unexpired Leases
    G.    Tax Consequences of Plan

III.   CONFIRMATION REQUIREMENTS AND PROCEDURES ........................... 13

      A.     Who May Vote or Object
           1.     What Is an Allowed Claim or an Allowed Equity Interest?
           2.     What Is an Impaired Claim or Impaired Equity Interest?
           3.     Who is Not Entitled to Vote
           4.     Who Can Vote in More Than One Class
      B.     Votes Necessary to Confirm the Plan
           1.     Votes Necessary for a Class to Accept the Plan
           2.     Treatment of Nonaccepting Classes
      C.     Liquidation Analysis
      D.     Feasibility
           1.     Ability to Initially Fund Plan
           2.     Ability to Make Future Plan Payments and Operate Without Further
                   Reorganization
IV.   EFFECT OF CONFIRMATION OF PLAN ………………………………………..16
      A.     DISCHARGE OF DEBTOR
      B.     Modification of Plan
      C.     Final Decree
V.    OTHER PLAN PROVISIONS ……………………………………………....… 16

I.    **INTRODUCTION**

This is the disclosure statement (the "Disclosure Statement") in the chapter 11 case of Mountain Investments, LLC (the "Debtor").  This Disclosure Statement contains information about the Debtor and describes the Plan of Reorganization (the "Plan") filed by Debtor on September 26, 2019. A full copy of the Plan is attached to this Disclosure Statement as Exhibit A.  ***Your rights may be affected.  You should read the Plan and this Disclosure Statement carefully and discuss them with your attorney.  If you do not have an attorney, you may wish to consult one.***

The proposed distributions under the Plan are discussed at pages 7 through 11 of this Disclosure Statement.  General unsecured creditors are identified in Class 8, and will receive a distribution of approximately 3.9% of their allowed claims, to be distributed as follows: $38,640.00 in month 60.

A.    **Purpose of This Document**

This Disclosure Statement describes:

- The Debtor and significant events during the bankruptcy case,
- How the Plan proposes to treat claims or equity interests of the type you hold (*i.e.*, what you will receive on your claim or equity interest if the plan is confirmed),
- Who can vote on or object to the Plan,
- What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan,
- Why [the Proponent] believes the Plan is feasible, and how the treatment of your claim or equity interest under the Plan compares to what you would receive on your claim or equity interest in liquidation, and
- The effect of confirmation of the Plan.

Be sure to read the Plan as well as the Disclosure Statement.  This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.

B.    **Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing**

The Court has not yet confirmed the Plan described in this Disclosure Statement.  This section describes the procedures pursuant to which the Plan will or will not be confirmed.

1.    *Hearing to Approve This Disclosure Statement*

The hearing at which the Court will determine whether to approve this Disclosure Statement will take place on October __, 2019, at 1:30 p.m., in Courtroom 3099, at the United States Bankruptcy Court, 280 South First Street, San Jose, California.

2.    *Deadline for Voting to Accept or Reject the Plan*

If you are entitled to vote to accept or reject the plan, vote on the enclosed ballot and return the ballot in the enclosed envelope to Dougherty & Guenther, APC, 601 S Main St, Salinas CA 93901. See section IV.A., below, for a discussion of voting eligibility requirements.

Your ballot must be received by [TBD] or it will not be counted.

        3.     *Deadline for Objecting to Confirmation of the Plan*

Objections to Confirmation of the Plan must be filed with the Court and served upon Debtor and Debtor's counsel by [TBD].

        4.     *Identity of Person to Contact for More Information*

If you want additional information about the Plan, you should contact Ralph Guenther, Esq., 601 S Main St, Salinas CA 93901.

    C.    **Disclaimer**

***This Disclosure Statement, if approved, does not constitute an endorsement of the Plan by the Court, or a recommendation that it be accepted.***

## II. BACKGROUND

    A.    **Description and History of the Debtor's Business**

Debtor is a limited liability company formed in 2008 by Michael and Brenda Noble. Mr. and Mrs. Noble purchased 7 rental properties in Gulfport area of Mississippi after Hurricane Katrina devastated Mississippi and Louisiana in 2005. Mr. and Mrs. Noble intended to rehabilitate the properties to provide affordable housing for local residents.

Property values in and around Gulfport declined precipitously beginning in 2008 and have yet to recover. The rents generated by the properties were insufficient to pay the amounts due for each note secured by the properties. Mr. Noble unsuccessfully sought to modify the notes.

During this time, Mr. and Mrs. Noble filed for divorce. The divorce settlement required Mr. Noble to transfer the properties to Mountain Investments, LLC, and to indemnify and hold harmless Brenda Noble for any liability on the notes secured by the properties. Thereafter, Mr. Noble transferred title to the Gulfport, Mississippi, properties to Mountain Investments, LLC. Mr. Noble also transferred title to 19024 Fieldstone Court, Salinas, California, his former personal residence, to Mountain Investments, LLC, in 2013. Mr. Noble is a co-debtor, along with Mountain Investments, LLC, on the loans secured by the subject properties in Mississippi and California.

    B.    **Management of Debtor and Description of Insiders**

Mr. Noble, the sole member and manager of the LLC, was appointed as the responsible individual for Debtor and has managed Debtor since the filing of the Chapter 11 Petition. Mr. Noble is the only insider of the Debtor.

C.     **Events Leading to Chapter 11 Filing**

The lenders for the properties refused to modify the notes and instead began the foreclosure process.  In order to enjoin the pending foreclosures and reorganize, Mr. Noble authorized Debtor to file a Chapter 11 Petition on March 28, 2016.

D.     **Significant Events during the Bankruptcy Case**

Debtor filed the following motions in connection with the following properties:

1.     1256 Tropical Court, Gulfport, Mississippi: Motion to Value – Value set at $49,000.00 pursuant to order entered February 14, 2017 [Doc# 92].

2.     1288 Tropical Court, Gulfport, Mississippi:  Motion to Value – Value set at $50,000.00 pursuant to stipulation between the parties.

3.     1290 Tropical Court, Gulfport, Mississippi:  Motion to Value – Value set at $50,000.00 pursuant to stipulation between the parties.

4.     1296 Tropical Court, Gulfport, Mississippi:  Motion to Value – Value set at $50,000.00 pursuant to stipulation between the parties.

5.     2222 30th Street, Gulfport, Mississippi:
   - Motion to Value – Value set at $97,500.00 pursuant to order entered February 14, 2017 [Doc# 94].
   - Motion to Strip – Real Time Resolutions Lien valued at zero pursuant to order entered February 14, 2017 [Doc# 93].

6.     5445 Quail Creek, Biloxi, Mississippi:  Motion to Value – Value set at $42,825.00 pursuant to stipulation between the parties.

7.     19024 Fieldstone Court, Salinas, California:
   - Motion to Value – Value set at $820,000.00 pursuant to stipulation between the parties.
   - Motion to Strip – JP Morgan Chase Bank N.A. Lien valued at zero pursuant to order entered February 21, 2017 [Doc# 95].

E.     **Projected Recovery of Avoidable Transfers**

The Debtor does not intend to pursue preference, fraudulent conveyance, or other avoidance actions.

F.     **Claims Objections**

Except to the extent that a claim is already allowed pursuant to a final non-appealable order, Debtor reserves the right to object to claims.  Therefore, even if your claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your claim is later upheld.  The procedures for resolving disputed claims are set forth in Article V of the Plan.

G.     **Current and Historical Financial Conditions**

The identity and fair market value of the estate's assets are as follows:

1.      1256 Tropical Court, Gulfport, Mississippi: $49,000.00 pursuant to order entered February 14, 2017 [Doc# 92]

2.      1288 Tropical Court, Gulfport, Mississippi:  $50,000.00 pursuant to stipulation between the parties.

3.      1290 Tropical Court, Gulfport, Mississippi:  $50,000.00 pursuant to stipulation between the parties.

4.      1296 Tropical Court, Gulfport, Mississippi:  $50,000.00 pursuant to stipulation between the parties.

5.      2222 30th Street, Gulfport, Mississippi:  $97,500.00 pursuant to order entered February 14, 2017 [Doc# 94].

6.      5445 Quail Creek, Biloxi, Mississippi:  $42,825.00 pursuant to stipulation between the parties.

7.      5447 Quail Creek, Biloxi, Mississippi:  $42,000.00 based on Debtor's opinion.

8.      19024 Fieldstone Court, Salinas, California:  $820,000.00 pursuant to stipulation between the parties.

The most recent post-petition operating report filed since the commencement of the Debtor's bankruptcy case is set forth in Exhibit B.

## III.     SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

### A.     What is the Purpose of the Plan of Reorganization?

As required by the Code, the Plan places claims and equity interests in various classes and describes the treatment each class will receive.  The Plan also states whether each class of claims or equity interests is impaired or unimpaired.  If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

### B.     Unclassified Claims

Certain types of claims are automatically entitled to specific treatment under the Code.  They are not considered impaired, and holders of such claims do not vote on the Plan.  They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code.  As such, the Plan Proponent has *not* placed the following claims in any class:

#### 1.     *Administrative Expenses*

Administrative expenses are costs or expenses of administering the Debtor's chapter 11 case which are allowed under § 507(a) (2) of the Code.  Administrative expenses also include the value of any goods sold to the Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcy petition.  The Code requires that all administrative expenses be paid on the effective date of the Plan, unless a particular claimant agrees to a different treatment.

The following chart lists the Debtor's estimated administrative expenses, and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|------|------------------------|---------------------|
| Professional Fees, as approved by the Court. | $45,000.00 | Paid in installments after Court approval |
| Clerk's Office Fees | N/A | Paid in full on the effective date of the Plan |
| Office of the U.S. Trustee Fees | $650.00 | Paid in full on the effective date of the Plan |
| TOTAL | $45,650.00 | |

    2. *Priority Tax Claims*

Priority tax claims are unsecured income, employment, and other taxes described by § 507(a) (8) of the Code. Unless the holder of such a § 507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

The following chart lists the Debtor's estimated § 507(a) (8) priority tax claims and their proposed treatment under the Plan:

| Description (name and type of tax) | Estimated Amount Owed | Date of Assessment | Treatment | |
|---|---|---|---|---|
| Franchise Tax Board | $3,713.88 | 2008, 2009, 2010, 2011, 2012, 2013, 2014, 2015, 2016 | Pmt interval<br><br>Monthly payment<br><br><br><br>Begin date<br>End date<br>Interest Rate %<br>Total Payout Amount | = monthly with balloon<br>= $30.00 [with $3,596.10 balloon on Feb 1, 2021]<br><br>= December 2019<br>= February 2021<br>= 4%<br>= $4,016.10 |

C. **Classes of Claims and Equity Interests**

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

    1. *Classes of Secured Claims*

Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code. If the value

of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency will [be classified as a general unsecured claim].

The following chart lists all classes containing Debtor's secured prepetition claims and their proposed treatment under the Plan:

| Class # | Description | Insider? (Yes or No) | Impairment | Treatment | |
|---------|-------------|----------------------|------------|-----------|--|
| #1 | *Secured claim of*: U.S. Bank Trust N.A. <br><br> Collateral description = 1256 Tropical Cove, Gulfport, MS <br><br> Priority of lien = 1st <br><br> Claim amount = $150,983.34 | No | Impaired | Monthly Pmt <br><br> Pmts Begin <br><br> Pmts End <br><br> Treatment of Lien: <br><br><br> Debtor responsible for insurance and taxes. | = $419.40 <br><br> = 12/1/19 <br><br> = 11/1/49 <br><br> Creditor has opted for 1111(b) treatment. |
| #2 | *Secured claim of*: Bank of America N.A. <br><br> Collateral description = 1288 Tropical Cove, Gulfport, MS <br><br> Allowed Secured Amount = $50,000.00 <br> Priority of lien = 1st <br><br> Principal owed = $129,397.02 (less amounts paid pursuant to stipulation between the parties) <br> Pre-pet. arrearage = $58,755.21 <br><br> Claim amount= $188,152.23 | No | Impaired | Monthly Pmt <br><br> Pmts Begin <br><br> Pmts End <br><br> Interest rate % <br><br> Treatment of Lien <br><br><br> Debtor responsible for insurance and taxes. | = $238.71 <br><br> = 12/1/19 <br><br> = 11/1/49 <br><br> = 4.00% <br><br> = Reduced based on value of real property |

| #3 | *Secured claim of*: Bank of America N.A.<br><br>Collateral description = 1290 Tropical Cove, Gulfport, MS<br><br>Allowed Secured Amount = $50,000.00<br>Priority of lien = 1st<br><br>Principal owed = $134,864.20 (less amounts paid pursuant to stipulation between the parties)<br>Pre-pet. arrearage = $29,232.33<br><br>Claim amount= $164,096.53 | No | Impaired | Monthly Pmt | = $238.71 |
| | | | | Pmts Begin | = 12/1/19 |
| | | | | Pmts End | = 11/1/49 |
| | | | | Interest rate % | = 4.00% |
| | | | | Treatment of Lien | = Reduced based on value of real property |
| | | | | Debtor responsible for insurance and taxes. | |
| #4 | *Secured claim of*: Bank of America N.A.<br><br>Collateral description = 1296 Tropical Cove, Gulfport, MS<br><br>Allowed Secured Amount = $50,000.00<br>Priority of lien = 1st<br><br>Principal owed = $129,578.46 (less amounts paid pursuant to stipulation between the parties)<br>Pre-pet. arrearage = $55,528.57<br><br>Claim amount= $185,107.06 | No | Impaired | Monthly Pmt | = $238.71 |
| | | | | Pmts Begin | = 12/1/19 |
| | | | | Pmts End | = 11/1/49 |
| | | | | Interest rate % | = 4.00% |
| | | | | Treatment of Lien | = Reduced based on value of real property |
| | | | | Debtor responsible for insurance and taxes. | |

| | | | | | |
|---|---|---|---|---|---|
| #5 | *Secured claim of*: Specialized Loan Servicing, LLC<br><br>Collateral description = 2222 30th Street, Gulfport, MS<br><br>Priority of lien = 1st<br><br>Claim amount= $243,247.70 (subject to objection by Debtor) | No | Impaired and Disputed Debtor believes that Creditor has not taken into account all payments tendered by Debtor. If Debtor is unable to reach a compromise regarding the claim amount, Debtor reserves the right to file an objection to Creditor's claim. | Monthly Pmt<br><br><br><br>Pmts Begin<br><br>Pmts End<br><br>Treatment of Lien<br><br>Debtor responsible for insurance and taxes. | = $675.69 for 360 months<br><br>= 12/1/19<br><br>= 11/1/49<br><br>= Creditor has opted for 1111(b) treatment. |
| #6 | *Secured claim of*: U.S. Bank Trust N.A.<br><br>Collateral description = 5445 Quail Creek, Biloxi, MS<br><br>Priority of lien = 1st<br><br>Claim amount= $96,284.56 (subject to objection by Debtor) | No | Impaired and Disputed Debtor believes that Creditor has not taken into account all payments tendered by Debtor. If Debtor is unable to reach a compromise regarding the claim amount, Debtor reserves the right to file an objection to Creditor's claim. | Monthly Pmt<br><br><br><br><br>Pmts Begin<br><br>Pmts End<br><br>Treatment of Lien<br><br>Debtor responsible for insurance and taxes. | = $240.00 for 36 months, then $270.51 for 324 months<br><br>= 12/1/19<br><br>= 11/1/49<br><br>= Creditor has opted for 1111(b) treatment. |
| #7 | *Secured claim of*: U.S Bank N.A.<br><br>Collateral description = 19024 Fieldstone Court, Salinas, CA<br><br>Claim amount= $967,584.09 | No | Impaired | Surrender property to creditor | |

2. *Classes of Priority Unsecured Claims*

Certain priority claims that are referred to in §§ 507(a) (1), (4), (5), (6), and (7) of the Code are required to be placed in classes. The Code requires that each holder of such a claim receive cash on

the effective date of the Plan equal to the allowed amount of such claim. However, a class of holders of such claims may vote to accept different treatment.

The following chart lists all classes containing claims under §§ 507(a) (1), (4), (5), (6), and (a) (7) of the Code and their proposed treatment under the Plan: **None**

3. *Class of General Unsecured Claims*

General unsecured claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code.

The following chart identifies the Plan's proposed treatment of Class 8 which contains general unsecured claims against the Debtor:

| Class # | Description | Impairment | Treatment | |
|---------|-------------|------------|-----------|--|
| #8 | General Unsecured Class | Impaired | One Pmt | = $38,640.00 on the 60th month after Effective Date |
| | | | Interest rate % | = 0% |
| | | | Estimated percent of claim paid | = 3.9% |

4. *Class of Equity Interest Holders*

Equity interest holders are parties who hold an ownership interest (*i.e.*, equity interest) in the Debtor. In a corporation, entities holding preferred or common stock are equity interest holders. In a partnership, equity interest holders include both general and limited partners. In a limited liability company ("LLC"), the equity interest holders are the members. Finally, with respect to an individual who is a debtor, the Debtor is the equity interest holder.

The following chart sets forth the Plan's proposed treatment of the class of equity interest holders:

| Class # | Description | Impairment | Treatment |
|---------|-------------|------------|-----------|
| #9 | Equity interest holders | Unimpaired | Retain ownership interest |

D. **Means of Implementing the Plan**

1. *Source of Payments*

Payments and distributions under the Plan will be funded by the following:

Rental income derived from real properties.

      2.    *Post-confirmation Management*

The Post-Confirmation Managers of the Debtor, and their compensation, shall be as follows:

| Name | Affiliations | Insider (yes or no)? | Position | Compensation |
|------|-------------|---------------------|----------|--------------|
| Michael Noble | Member | Yes | Manager | Net rental income after ordinary and necessary expenses |

E.     **Risk Factors and Default Provisions**

Debtor's Manager resides in Monterey County, California. Seven of the eight rental properties are located in Mississippi. Debtor relies on a property manager to keep each property rented and to oversee appropriate maintenance. If a tenant moves out with paying rent, and/or damages the property, additional time may be needed to rehabilitate the property before a new tenant can move in. Each time this happens there is a resulting disruption in the rental income stream. Creditors should take these risks into account before voting on the proposed Plan.

Upon Debtor's default in making any payments required by the Plan of Reorganization, the Creditor may serve written notice of default to Debtor and Debtor's attorney. If Debtor fails to cure the default within fifteen (15) days after mailing such notice, Creditor may file and serve a declaration under penalty of perjury specifying the default, together with a proposed order allowing Creditor to proceed with its state law remedies, which the Court may grant without further notice or hearing.

F.     **Executory Contracts and Unexpired Leases**

The Plan, in Section 6.01(a), lists all executory contracts and unexpired leases that the Debtor will assume under the Plan. Assumption means that the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Code, if any. Section 6.01(b) also lists how the Debtor will cure and compensate the other party to such contract or lease for any such defaults.

If you object to the assumption of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of performance, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan, unless the Court has set an earlier time.

All executory contracts and unexpired leases that are not listed in Exhibit 5.1 will be rejected under the Plan. Consult your adviser or attorney for more specific information about particular contracts or leases.

If you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

G.     **Tax Consequences of Plan**

*Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, And/Or Advisors.*

The following are the anticipated tax consequences of the Plan:

(1)     Debtor proposes to pay all priority tax claims in full.  To the extent that remaining claims are compromised, Debtor's Member may incur cancellation of debt income. This should not have any effect on Debtor.

(2)     Other creditors should consult with a tax professional to determine the general tax consequences of any discharge and/or the receipt of plan consideration after confirmation.

IV.     **CONFIRMATION REQUIREMENTS AND PROCEDURES**

To be confirmable, the Plan must meet the requirements listed in §§ 1129(a) or (b) of the Code. These include the requirements that:  the Plan must be proposed in good faith; at least one impaired class of claims must accept the plan, without counting votes of insiders; the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and the Plan must be feasible.  These requirements are <u>not</u> the only requirements listed in § 1129, and they are not the only requirements for confirmation.

A.     **Who May Vote or Object**

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan.  A creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both (1) allowed or allowed for voting purposes and (2) impaired.

In this case, the Plan Proponent believes that classes 1 through 8 are impaired and that holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan.  The Plan Proponent believes that class 9 is unimpaired and that holders of claims in each of these classes, therefore, do not have the right to vote to accept or reject the Plan.

1.     *What Is an Allowed Claim or an Allowed Equity Interest?*

Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Plan.  Generally, a claim or equity interest is allowed if either (1) the Debtor

has scheduled the claim on the Debtor's schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or (2) the creditor has filed a proof of claim or equity interest, unless an objection has been filed to such proof of claim or equity interest. When a claim or equity interest is not allowed, the creditor or equity interest holder holding the claim or equity interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or equity interest for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

***The deadline for filing a proof of claim in this case was July 26, 2016.***

     2.     *What Is an Impaired Claim or Impaired Equity Interest?*

As noted above, the holder of an allowed claim or equity interest has the right to vote only if it is in a class that is *impaired* under the Plan. As provided in § 1124 of the Code, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

     3.     *Those **Not** Entitled to Vote*

The holders of the following five types of claims and equity interests are *not* entitled to vote:

- holders of claims and equity interests that have been disallowed by an order of the Court;

- holders of other claims or equity interests that are not "allowed claims" or "allowed equity interests" (as discussed above), unless they have been "allowed" for voting purposes.

- holders of claims or equity interests in unimpaired classes;

- holders of claims entitled to priority pursuant to §§ 507(a)(2), (a)(3), and (a)(8) of the Code; and

- holders of claims or equity interests in classes that do not receive or retain any value under the Plan;

- administrative expenses.

***Even If You Are Not Entitled to Vote on the Plan, You Have a Right to Object to the Confirmation of the Plan [and to the Adequacy of the Disclosure Statement].***

     4.     *Who Can Vote in More Than One Class*

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

B.    **Votes Necessary to Confirm the Plan**

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and

(2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cram down" on non-accepting classes, as discussed later in Section [B.2.].

1. *Votes Necessary for a Class to Accept the Plan*

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

A class of equity interests accepts the Plan if the holders of at least two-thirds (2/3) in amount of the allowed equity interests in the class, who vote, cast their votes to accept the Plan.

2. *Treatment of Nonaccepting Classes*

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner prescribed by § 1129(b) of the Code. A plan that binds nonaccepting classes is commonly referred to as a "cram down" plan. The Code allows the Plan to bind nonaccepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of § 1129(a) (8) of the Code, does not "discriminate unfairly," and is "fair and equitable" toward each impaired class that has not voted to accept the Plan.

***You should consult your own attorney if a "cramdown" confirmation will affect your claim or equity interest, as the variations on this general rule are numerous and complex.***

C. **Liquidation Analysis**

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to this Disclosure Statement as Exhibit C.

D. **Feasibility**

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

1. *Ability to Initially Fund Plan*

The Plan Proponent believes that the Debtor will have enough cash on hand on the effective date of the Plan to pay all the claims and expenses that are entitled to be paid on that date. Tables showing the amount of cash on hand on the effective date of the Plan and the sources of that cash are attached to this disclosure statement as Exhibit D.

2. *Ability to Make Future Plan Payments and Operate Without Further Reorganization*

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments.

The Plan Proponent has provided projected financial information. Those projections are listed in Exhibit E.

The Plan Proponent's financial projections show that the Debtor will have an aggregate annual average cash flow, after paying operating expenses and post-confirmation taxes, of $26,000. The final Plan payment is expected to be paid in February 2024.

***You Should Consult with Your Accountant or other Financial Advisor If You Have Any Questions Pertaining to These Projections.***

## V.     EFFECT OF CONFIRMATION OF PLAN

### A.     DISCHARGE OF DEBTOR

On the effective date of the Plan, the Debtor shall be discharged from any debt that arose before confirmation of the Plan, subject to the occurrence of the effective date, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor shall not be discharged of any debt (i) imposed by the Plan, (ii) of a kind specified in § 1141(d)(6)(A) if a timely complaint was filed in accordance with Rule 4007(c) of the Federal Rules of Bankruptcy Procedure, or (iii) of a kind specified in § 1141(d)(6)(B). After the effective date of the Plan your claims against the Debtor and its member will be limited to the debts described in clauses (i) through (iii) of the preceding sentence.

### B.     Modification of Plan

The Plan Proponent may modify the Plan at any time before confirmation of the Plan. However, the Court may require a new disclosure statement and/or re-voting on the Plan. The Plan Proponent may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated *and* (2) the Court authorizes the proposed modifications after notice and a hearing.

### C.     Final Decree

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Plan Proponent, or such other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case. Alternatively, the Court may enter such a final decree on its own motion.

## VI.     OTHER PLAN PROVISIONS

N/A

Dated:  September 26, 2019         /s/ Dr. Michael Noble

                                     Dr. Michael Noble

**EXHIBITS**

**Exhibit A –** Copy of Proposed Plan of Reorganization

In re   **Mountain Investments, LLC**

Debtor(s)

Case No.   **16-50906**

Chapter   **11**

## MOUNTAIN INVESTMENTS LLC'S (PROPOSED) PLAN OF REORGANIZATION,

## DATED SEPTEMBER 26, 2019

## ARTICLE I
## SUMMARY

This Plan of Reorganization (the "Plan") under chapter 11 of the Bankruptcy Code (the "Code") proposes to pay creditors of Mountain Investments, LLC (the "Debtor") from future rental income.

This Plan provides for 7 classes of unsecured claims; 1 class of unsecured claims and 1 class of equity security holders.   Unsecured creditors holding allowed claims will receive distributions, which the proponent of this Plan has valued at approximately 3.9 cents on the dollar.   This Plan also provides for the payment of administrative claims on the effective date of the plan and priority claims over four years from the effective date of the plan.

All creditors and equity security holders should refer to Articles III through VI of this Plan for information regarding the precise treatment of their claim.   A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan. **Your rights may be affected.   You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

## ARTICLE II
## CLASSIFICATION OF CLAIMS AND INTERESTS

2.01   <u>Class 1</u>.      U.S. Bank Trust N.A.

2.02   <u>Class 2</u>.      Bank of America N.A.

2.03   <u>Class 3</u>.      Bank of America N.A.

2.04   <u>Class 4</u>.      Bank of America N.A.

2.05   <u>Class 5</u>.      Specialized Loan Servicing, LLC.

2.06   <u>Class 6</u>.      U.S. Bank Trust N.A.

2.07   <u>Class 7</u>.      U.S. Bank N.A.

2.08   <u>Class 8</u>.      General Unsecured Creditors

2.09   <u>Class 9</u>.      Equity Interest Holders

## ARTICLE III
## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS,
## U.S. TRUSTEES FEES, AND PRIORITY TAX CLAIMS

3.01   <u>Unclassified Claims</u>.   Under section §1123(a)(1), administrative expense claims, and priority tax claims are not in classes.

3.02   <u>Administrative Expense Claims</u>.   Each holder of an administrative expense claim allowed under § 503 of the Code will be paid in full on the effective date of this Plan (as defined in Article VII), in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

3.03   <u>Priority Tax Claims</u>.   Each holder of a priority tax claim will be paid as follows:

(1)   The Franchise Tax Board will be paid in full in monthly installments beginning December 2019, in the amount of $30.00 for 14 months with a balloon payment of $3,596.10 due February 1, 2021, which includes interest at 4%.   Debtor estimates the term to be 15 months.

3.04   <u>United States Trustee Fees</u>.   All fees required to be paid by 28 U.S.C. §1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code.   Any U.S. Trustee Fees owed on or before the effective date of this Plan will be paid on the effective date. Debtor shall pay post-confirmation U.S. Trustee Fees as they are incurred.

# ARTICLE IV
## TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

4.01   Claims and interests shall be treated as follows under this Plan:

| Class | Impairment | Treatment |
|---|---|---|
| Class 1 – U.S. Bank Trust N.A. (secured by 1256 Tropical Cove, Gulfport, Mississippi) | Impaired | Class 1 shall be paid in equal monthly installments of $419.40 with the first payment due on 12/1/19 and a final payment due on 11/1/49. Interest will accrue at the rate of 4%. Debtor responsible for insurance and taxes. |
| Class 2 – Bank of America N.A. (secured by 1288 Tropical Court, Gulfport, Mississippi) | Impaired | Class 2 shall be paid in equal monthly installments of $238.71 with the first payment due on 12/1/19 and a final payment due on 11/1/49. Interest will accrue at the rate of 4%. Debtor responsible for insurance and taxes. |
| Class 3 – Bank of America N.A. (secured by 1290 Tropical Court, Gulfport, Mississippi) | Impaired | Class 3 shall be paid in equal monthly installments of $238.71 with the first payment due on 12/1/19 and a final payment due on 11/1/49. Interest will accrue at the rate of 4%. Debtor responsible for insurance and taxes. |
| Class 4 – Bank of America N.A. (secured by 1296 Tropical Court, Gulfport, Mississippi) | Impaired | Class 4 shall be paid in equal monthly installments of $238.71 with the first payment due on 12/1/19 and a final payment due on 11/1/49. Interest will accrue at the rate of 4%. Debtor responsible for insurance and taxes. |

| | | |
|---|---|---|
| Class 5 – Specialized Loan Servicing, LLC (secured by 2222 30th Street, Gulfport, Mississippi) | Impaired and Disputed Debtor believes that Creditor has not taken into account all payments tendered by Debtor.   If Debtor is unable to reach a compromise regarding the claim amount, Debtor reserves the right to file an objection to Creditor's claim. | Class 5 shall be paid in monthly installments of $675.69 for 360 months beginning on 12/1/19 and a final payment due on 11/1/49. Debtor responsible for insurance and taxes. |
| Class 6 – U.S. Bank Trust N.A. (secured by 5445 Quail Creek, Biloxi, Mississippi | Impaired and Disputed Debtor believes that Creditor has not taken into account all payments tendered by Debtor.   If Debtor is unable to reach a compromise regarding the claim amount, Debtor reserves the right to file an objection to Creditor's claim. | Class 6 shall be paid in monthly installments of $240.00 for 36 months beginning on 12/1/19 and then 324 equal monthly installments of $270.54 with a final payment due on 11/1/49. Debtor responsible for insurance and taxes. |
| Class 7 – U.S. Bank N.A. (secured by 19024 Fieldstone Ct., Salinas, California | Impaired | The property securing the Class 7 creditor's loan shall be surrendered and the creditor shall be entitled to proceed with its state law remedies against the property. |
| Class 8 – General Unsecured Creditors | Impaired | Class 8 shall be paid $38,640.00 in the 60 month after the effective date.   Class 8 creditors are expected to be paid 3.9% of their claims without interest. |
| Class 9 – Equity Interest Holders | Unimpaired | Class 9 shall be entitled to the net rental income after ordinary and necessary expenses and plan payments. |

## ARTICLE V
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

5.01    Disputed Claim. A disputed claim is a claim that has not been allowed or disallowed [by a final non-appealable order], and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

5.02    Delay of Distribution on a Disputed Claim.   Distributions will be made on account of a disputed claims consistent with the Plan terms until a final, non-appealable order is entered by the Court, at which time the payments will be recalculated consistent with the Court's order.

5.03    Settlement of Disputed Claims.   The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## ARTICLE VI
## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.01    Assumed Executory Contracts and Unexpired Leases.

(a)      The Debtor assumes the following executory contracts and/or unexpired leases effective upon the date of the entry of the order confirming this Plan:

| Name of Other Parties to Lease or Contract | Description of Contract or Lease |
|---|---|
| Sally Kirby, Shelby Kirby & Trace King | Residential Lease – 1256 Tropical Cove |
| Tatianna Graham | Residential Lease – 1288 Tropical Cove |
| Kawenta Harvey | Residential Lease – 1290 Tropical Cove |
| Tiffany Godwin & Johnny Taylor | Residential Lease – 1296 Tropical Cove |
| Sarah McKinney | Residential Lease – 5445 Quail Creek |
| Robin Tapper & Ann Vincent | Residential Lease – 5447 Quail Creek |
| Maria Cortez | Residential Lease – 2222 30th Street, Unit #A |
| Glenn Robinson | Residential Lease – 2222 30th Street, Unit #B |
| Sandra Howard | Residential Lease – 2222 30th Street, Unit #C |

(b)      The Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed under section 6.01(a) above, or before the date of the order confirming this Plan, upon the date of the entry of the order confirming this Plan.   A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than thirty (30) days after the date of the order confirming this Plan.

## ARTICLE VII
## MEANS FOR IMPLEMENTATION OF THE PLAN

Debtor will fund the Plan from future rental income.   Dr. Michael Noble will continue to act as manager of Debtor.

## ARTICLE VIII
## DEFAULT PROVISIONS

Upon Debtor's default in making any payments required by the Plan of Reorganization, the Creditor may serve written notice of default to Debtor and Debtor's attorney.   If Debtor fails to cure the default within fifteen (15) days after mailing such notice, Creditor may file and serve a declaration under penalty of perjury specifying the default, together with a proposed order allowing Creditor to proceed with its state law remedies, which the Court may grant without further notice or hearing.

## ARTICLE IX
## GENERAL PROVISIONS

9.01    Definitions and Rules of Construction.   The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions:

9.02    Effective Date of Plan.   The effective date of this Plan is the first business day following the date that is fourteen days after the entry of the order of confirmation.   If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay of the confirmation order expires or is otherwise terminated.

9.03    Severability.   If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

9.04    Binding Effect.   The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

9.05    Captions.   The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

Case: 16-50906    Doc# 255    Filed: 09/26/19    Entered: 09/26/19 16:53:12    Page 22 of
40

9.06   <u>Controlling Effect</u>.   Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of California govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.   The residential leases for those rental real properties located in Mississippi shall be governed by the laws of the State of Mississippi.

9.07   <u>Corporate Governance</u>.   Except as herein provided, the rights of Debtor's sole member shall be consistent with Alaska law and any Operating Agreement in effect when the case was filed.

# ARTICLE X
# <u>DISCHARGE OF DEBTOR</u>

10.01   <u>Discharge</u>.   Debtor shall be entitled to a discharge upon entry of an order confirming this Plan.

# ARTICLE XI
# <u>OTHER PROVISIONS</u>

Debtor retains the right to pay its obligations under the Plan from the sale of real property owned by Debtor. Debtor also retains the right to surrender any real property at which time the affected secured creditor shall be allowed to proceed with a non-judicial foreclosure of its security.

Respectfully submitted,

By:   */s/Michael Noble*
      **Dr. Michael Noble**
      The Plan Proponent

By:   */s/Ralph P. Guenther*
      **Ralph P. Guenther 124245**
      Attorney for the Plan Proponent

**Exhibit B –** Most Recently Filed Post-Petition Operating Report

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA

| In re: Mountain Investments, LLC | **Case No.** | 16-50906 |
|---|---|---|
| | **CHAPTER 11** **MONTHLY OPERATING REPORT** **(GENERAL BUSINESS CASE)** | |

## SUMMARY OF FINANCIAL STATUS

**MONTH ENDED:** 08/31/19        **PETITION DATE:** 03/28/16

1. Debtor in possession (or trustee) hereby submits this Monthly Operating Report on the Accrual Basis of accounting (or if checked here the Office of the U.S. Trustee or the Court has approved the Cash Basis of Accounting for the Debtor).
   Dollars reported in    $1

| | | End of Current Month | End of Prior Month | As of Petition Filing |
|---|---|---|---|---|
| 2. | **Asset and Liability Structure** | | | |
| | a. Current Assets | $32,556 | $25,888 | |
| | b. Total Assets | $1,232,556 | $1,227,923 | $1,182,990 |
| | c. Current Liabilities | $40,120 | $39,369 | |
| | d. Total Liabilities | $2,242,415 | $2,229,405 | $2,202,295 |

| | | Current Month | Prior Month | Cumulative (Case to Date) |
|---|---|---|---|---|
| 3. | **Statement of Cash Receipts & Disbursements for Month** | | | |
| | a. Total Receipts | $16,781 | $12,036 | $262,977 |
| | b. Total Disbursements | $12,148 | $10,001 | $214,094 |
| | c. Excess (Deficiency) of Receipts Over Disbursements (a - b) | $4,633 | $2,035 | $48,883 |
| | d. Cash Balance Beginning of Month | $27,923 | $25,888 | |
| | e. Cash Balance End of Month (c + d) | $32,556 | $27,923 | |

| | | Current Month | Prior Month | Cumulative (Case to Date) |
|---|---|---|---|---|
| 4. | **Profit/(Loss) from the Statement of Operations** | $488 | $488 | $34,944 |
| 5. | **Account Receivables (Pre and Post Petition)** | $0 | $0 | |
| 6. | **Post-Petition Liabilities** | $40,120 | $39,369 | |
| 7. | **Past Due Post-Petition Account Payables (over 30 days)** | $0 | $0 | |

**At the end of this reporting month:**

| | | Yes | No |
|---|---|---|---|
| 8. | Have any payments been made on pre-petition debt, other than payments in the normal course to secured creditors or lessors? (if yes, attach listing including date of payment, amount of payment and name of payee) | | x |
| 9. | Have any payments been made to professionals? (if yes, attach listing including date of payment, amount of payment and name of payee) | | x |
| 10. | If the answer is yes to 8 or 9, were all such payments approved by the court? | | x |
| 11. | Have any payments been made to officers, insiders, shareholders, relatives? (if yes, attach listing including date of payment, amount and reason for payment, and name of payee) | | x |
| 12. | Is the estate insured for replacement cost of assets and for general liability? | x | |
| 13. | Are a plan and disclosure statement on file? | | x |
| 14. | Was there any post-petition borrowing during this reporting period? | | x |

15. Check if paid: Post-petition taxes ___ ;       U.S. Trustee Quarterly Fees   x   ; Check if filing is current for: Post-petition
    tax reporting and tax returns:       .
    (Attach explanation, if post-petition taxes or U.S. Trustee Quarterly Fees are not paid current or if post-petition tax
    reporting and tax return filings are not current.)

I declare under penalty of perjury I have reviewed the above summary and attached financial statements, and after making reasonable inquiry
believe these documents are correct.

Date: 9/26/2019 0:00

/s/ Michael Noble
Responsible Individual

*Dr. M. J. Noble*

Case: 16-50906    Doc# 2554    Filed: 09/26/19    Entered: 09/26/19 16:57:52    Page 25 of
40
Revised 1/1/98

# STATEMENT OF OPERATIONS
## (General Business Case)
For the Month Ended _____08/31/19_____

| | Current Month | | | | Cumulative (Case to Date) | Next Month Forecast |
|---|---|---|---|---|---|---|
| Actual | Forecast | Variance | | | | |
| | | | | **Revenues:** | | |
| $8,741 | $10,000 | ($1,259) | 1 | Gross Rent | $357,030 | $8,500 |
| | $1,000 | ($1,000) | 2 | less: Deposit Returns. Repairs, Mgt Fees, & Allowanc | $0 | $500 |
| $8,741 | $9,000 | ($259) | 3 | Net Rent | $357,030 | $8,000 |
| | $3,894 | ($3,894) | 4 | less: Mortgages, Tax & Insurance (Schedule 'B') | | $4,206 |
| $8,741 | $5,106 | $3,635 | 5 | Gross Profit | $357,030 | $3,794 |
| $8,741 | | | 6 | Interest | | |
| | | $0 | 7 | Other Income: | | |
| | $0 | $0 | 8 | Return of Fraud Charges to Acct | | $0 |
| | | $0 | 9 | | | |
| $8,741 | $5,106 | $3,635 | 10 | **Total Revenues** | $357,030 | $3,794 |
| | | | | **Expenses:** | | |
| | | $0 | 11 | Compensation to Owner(s)/Officer(s) | | |
| | | $0 | 12 | Salaries | | |
| | | $0 | 13 | Commissions (New Tenant Commission ) | | |
| | | $0 | 14 | Contract Labor | | |
| | | | | Rent/Lease: | | |
| | | $0 | 15 | Personal Property | | |
| | | $0 | 16 | Real Property | | |
| | | $0 | 17 | Insurance | | |
| | | $0 | 18 | Management Fees | | |
| | | $0 | 19 | Depreciation | | |
| | | | | Taxes: | | |
| | | $0 | 20 | Employer Payroll Taxes | | |
| | | $0 | 21 | Real Property Taxes (Missi) | | |
| | | $0 | 22 | Other Taxes | | |
| | | $0 | 23 | Other Selling | | |
| $2,000 | | | 24 | Other Administrative (Draws) | $40,343 | |
| | | $0 | 25 | Interest | | |
| | $0 | $0 | 26 | Other Expenses: | $0 | |
| | | | 27 | Noble Personal & School Loan Navient* | | $566 |
| $4,786 | $1,000 | $3,786 | 28 | Fieldstone Property Expenses | $222,261 | $1,000 |
| $506 | $250 | $256 | 29 | Misc. LLC Expenses | $43,096 | $500 |
| $0 | | | 30 | Estill & Long Accountants | | $246 |
| $0 | | $0 | 31 | Charges to be reimbursed to LLC* | | |
| | $0 | $0 | 32 | Soelberg LLC Fee | | |
| $869 | | ($869) | 33 | MS Mortgage & Ins | $38,143 | $9,131 |
| $3,337 | | ($3,337) | 34 | *to be reimbursed | $7,029 | |
| $11,498 | $1,250 | ($1,748) | 35 | **Total Expenses** | $350,872 | $11,443 |
| ($2,757) | $3,856 | $659 | 36 | Subtotal | $6,158 | ($7,649) |
| | | | | **Reorganization Items:** | | |
| $0 | $0 | $0 | 37 | Professional Fees | $40,120 | $0 |
| | | $0 | 38 | Provisions for Rejected Executory Contracts | | |
| | | $0 | 39 | Interest Earned on Accumulated Cash from Resulting Chp 11 Case | | |
| | | $0 | 40 | Gain or (Loss) from Sale of Equipment | | |
| $650 | | ($650) | 41 | U.S. Trustee Quarterly Fees | $6,500 | |
| | | $0 | 42 | | | |
| $650 | $0 | $650 | 43 | **Total Reorganization Items** | $0 | $0 |
| ($2,757) | $3,856 | ($6,613) | 44 | **Net Profit (Loss) Before Federal & State Taxes** | $6,158 | ($7,649) |
| | | $0 | 45 | Federal & State Income Taxes | | |
| ($2,757) | $3,856 | ($6,613) | 46 | **Net Profit (Loss)** | $6,158 | ($7,649) |

Attach an Explanation of Variance to Statement of Operations (For variances greater than +/- 10% only):

Revised 1/1/98

# BALANCE SHEET
## (General Business Case)
### For the Month Ended        08/31/19

**Assets**

| | | From Schedules | Market Value |
|---|---|---|---|
| | **Current Assets** | | |
| 1 | Cash and cash equivalents - unrestricted | | $32,556 |
| 2 | Cash and cash equivalents - restricted | | |
| 3 | Accounts receivable (net) | A | |
| 4 | Professional retainers | | |
| 5 | Other: | | |
| 6 | | | |
| | **Total Current Assets** | | $32,556 |
| | **Property and Equipment (Market Value)** | | |
| 7 | Real property (Value per appraisals prepared by the bank.) | C | $1,200,000 |
| 8 | Office equipment | D | $0 |
| 9 | Other: | D | $0 |
| 10 | | D | |
| | **Total Property and Equipment** | | $1,200,000 |
| | **Other Assets** | | |
| 11 | | | |
| 12 | | | |
| | **Total Other Assets** | | $0 |
| | **Total Assets** | | $1,232,556 |

**NOTE:**

Indicate the method used to estimate the market value of assets (e.g., appraisals; familiarity with comparable market prices, etc.) and the date the value was determined.

Revised 1/1/98

# Liabilities and Equity
## (General Business Case)

**Liabilities From Schedules**

    **Post-Petition**

        **Current Liabilities**

| | | | | |
|---|---|---|---|---|
| 13 | Salaries and wages | | | |
| 14 | Payroll taxes | | | |
| 15 | Real and personal property taxes | | | |
| 16 | Income taxes | | | |
| 17 | Notes payable (short term) | | | |
| 18 | Accounts payable (trade) | A | | $0 |
| 19 | Accrued professional fees | | | $40,120 |
| 20 | Current portion of long-term post-petition debt (due within 12 months) | | | |
| 21 | Other: | | | |
| 22 | | | | |

        **Total Current Liabilities**                            $40,120

        **Long-Term Post-Petition Debt, Net of Current Portion**

            **Total Post-Petition Liabilities**                $40,120

    **Pre-Petition Liabilities (allowed amount)**

| | | | | |
|---|---|---|---|---|
| 23 | Secured claims | F | | $2,193,883 |
| 24 | Priority unsecured claims | F | | $0 |
| 25 | General unsecured claims | F | | $8,412 |

        **Total Pre-Petition Liabilities**               $2,202,295

        **Total Liabilities**                     $2,242,415

**Equity (Deficit)**

| | | | |
|---|---|---|---|
| 26 | Retained Earnings/(Deficit) at time of filing | | |
| 27 | Cumulative profit/(loss) since filing of case | | |
| 28 | Post-petition contributions/(distributions) or (draws) | | |
| 29 | | | |
| 30 | Market value adjustment | | |

        **Total Equity (Deficit)**                  $0

**Total Liabilities and Equity (Deficit)**           $2,229,405

Revised 1/1/98

## STATEMENT OF CASH RECEIPTS AND DISBURSEMENTS
### Increase/(Decrease) in Cash and Cash Equivalents
### For the Month Ended     08/31/19

| | | Actual Current Month | Cumulative (Case to Date) |
|---|---|---|---|
| | **Cash Receipts** | | |
| 1 | Rent/Leases Collected | $8,741 | $365,771 |
| 2 | Interest Received | | |
| 3 | Borrowings/ reimbursements by Noble | $4,589 | $16,513 |
| 4 | Funds from Shareholders, Partners, or Other Insiders | | |
| 5 | Capital Contributions | | |
| 6 | Refunds | $3,451 | $23,197 |
| 7 | Fraud Charges Reimbursement | | |
| 8 | | | |
| 9 | **Total Cash Receipts** | $16,781 | $374,373 |
| | **Cash Disbursements** | | |
| 10 | Administrative - UST Fees | $650 | $6,500 |
| 11 | Capital Expenditures | | |
| 12 | Principal Payments on Debt | | |
| 13 | Interest Paid | | |
| | Amount Paid to Owner(s)/Officer(s) | | |
| 14 | Salaries | | |
| 15 | Draws | $2,000 | $40,343 |
| 16 | Expense Reimbursements | $3,337 | $8,328 |
| 17 | Other-Legal etc. | | |
| 18 | Noble Personal School Loan | | |
| | Taxes: | | |
| 20 | Employee Withholding | | |
| 21 | Employer Payroll Taxes | | |
| 22 | Real Property Taxes | | |
| 23 | Other Taxes | | |
| 24 | Other Cash Outflows: | | |
| 25 | Fieldstone Property Expenses | $4,786 | $222,261 |
| 26 | LLC Expenses | $506 | $43,096 |
| | Insurance for Sept 2017-Sept 2018 Ms. Homes | | $11,729 |
| 27 | Selene Payments/ Mortgage | $869 | $36,322 |
| | Mississippi Rent Return, paid in error | | $4,562 |
| | **Total Cash Disbursements:** | $12,148 | $373,141 |
| | **Net Increase (Decrease) in Cash** | $4,633 | |
| | **Cash Balance, Beginning of Period** | $27,923 | |
| | **Cash Balance, End of Period** | $32,556 | |

Revised 1/1/98

# STATEMENT OF CASH FLOWS

## (Optional) Increase/(Decrease) in Cash and Cash Equivalents

### For the Month Ended    08/31/19

| | | Actual Current Month | Cumulative (Case to Date) |
|---|---|---|---|
| | **Cash Flows From Operating Activities** | | |
| 1 | Rent/Leases Collected | $8,741 | $365,771 |
| 2 | TD Ameritrade Return from Account Closure | | |
| 3 | Return/Refunds | $3,451 | $23,195 |
| 4 | Cash Paid for Administrative Expenses | | $650 |
| 5 | Reimbursement by Noble | $4,589 | $ 16,513 |
| 6 | Real Property | | |
| 7 | Cash Paid for Interest | | |
| 8 | Cash Paid to Owner(s)/Officer(s) | | |
| 9 | Salaries | | |
| 10 | Draws | $2,000 | $40,343 |
| 11 | Expense Reimbursements/Mississippi Rent Return, paid in error | $3,337 | $7,899 |
| 12 | Mike Noble's School Loan, Personal Expense | | $5,821 |
| 13 | Cash Paid for Taxes Paid/Deposited to Tax Acct. | | |
| 14 | Employee Withholdings | | |
| 15 | Real Property Taxes | | |
| 16 | Other Taxes | | $800 |
| 17 | Cash Paid for General Expenses - Ms. Prop Insur. with Wind & Flood Coverage | | $5,976 |
| 18 | Fieldstone Property Expenses- | $4,786 | $222,261 |
| 19 | LLC Misc Business Expenses - | $506 | $43,096 |
| 20 | Selene Financial/ Mortgage Payments | $869 | $37,461 |
| | | | |
| 21 | **Net Cash Provided (Used) by Operating Activities before Reorganization Items** | $2,580 | $10,798 |
| | **Cash Flows From Reorganization Items** | | |
| 22 | Interest Received on Cash Accumulated Due to Chp 11 Case | | |
| 23 | Professional Fees Paid for Services in Connection with Chp 11 Case | | |
| 24 | U.S. Trustee Quarterly Fees | $650 | $6,500 |
| 25 | | | |
| 26 | **Net Cash Provided (Used) by Reorganization Items** | ($650) | ($6,500) |
| 27 | **Net Cash Provided (Used) for Operating Activities and Reorganization Items** | $1,930 | $4,298 |
| 28 | **Cash Flows From Investing Activities** | | |
| 29 | Capital Expenditures | | |
| 30 | Proceeds from Sales of Capital Goods due to Chp 11 Case | | |
| 31 | | | |
| 32 | **Net Cash Provided (Used) by Investing Activities** | $0 | $0 |
| 33 | **Cash Flows From Financing Activities** | | |
| 34 | Net Borrowings (Except Insiders) | | |
| 35 | Net Borrowings from Shareholders, Partners, or Other Insiders | | |
| 36 | Capital Contributions | | |
| 37 | Principal Payments | | |
| 38 | | | |
| 39 | **Net Cash Provided (Used) by Financing Activities** | | $0 |
| 40 | **Net Increase (Decrease) in Cash and Cash Equivalents** | $1,930 | $4,298 |
| 41 | **Cash and Cash Equivalents at Beginning of Month** | $27,923 | |
| 42 | **Cash and Cash Equivalents at End of Month** | $32,556 | $4,298 |

Revised 1/1/98

|                                | 08/31/19 |            |
| ------------------------------ | -------- | ---------- |
| **Fieldstone Property**        |          |            |
|                                |          |            |
| **Gross Rent & Deposits Rcvd** | $        | 3,439.33   |

**Home Repair Activities & Costs:**

|                                    |    |            |
| ---------------------------------- | -- | ---------- |
| Mortgage Payment                   | $  | 3,336.75   |
| Utilties                           | $  | 1,192.19   |
| HOA Expense                        | $  | 182.00     |
| Insurance                          | $  | 27.50      |
| Taxes                              |    |            |
| Deposit Return                     |    |            |
| Management Fee                     |    |            |
| Rental Leasing Acquisition Fee/    | $  | -          |
| Eviction Legal Fees/               |    |            |
| Maintenance                        | $  | 47.79      |
|                                    |    |            |
| **TOTAL EXPENSES**                 | $  | 4,786.23   |
| **Net Rental Income**              | $  | (1,346.90) |

# Wells Fargo Business Choice Checking



MOUNTAIN INVESTMENTS, LLC
DEBTOR IN POSSESSION
CH.11 CASE#16-50906 (NCA)
675 SPENCER ST
MONTEREY CA 93940-1337

## Questions?

*Available by phone 24 hours a day, 7 days a week:*
Telecommunications Relay Services calls accepted

**1-800-CALL-WELLS**  (1-800-225-5935)

*TTY:* 1-800-877-4833
*En español:* 1-877-337-7454

*Online:* wellsfargo.com/biz

*Write:* Wells Fargo Bank, N.A. (114)
P.O. Box 6995
Portland, OR  97228-6995

## Your Business and Wells Fargo

Since August 2003, the Wells Fargo/Gallup Small Business Index has surveyed small business owners on current and future perceptions of their business financial situation. View the latest results at wellsfargoworks.com.

## Account options

*A check mark in the box indicates you have these convenient services with your account(s).  Go to wellsfargo.com/biz or call the number above if you have questions or if you would like to add new services.*

| | |
|---|---|
| Business Online Banking | ☑ |
| Online Statements | ☑ |
| Business Bill Pay | ☑ |
| Business Spending Report | ☑ |
| Overdraft Protection | ☐ |

## Activity summary

| | |
|---|---|
| Beginning balance on 8/1 | $27,923.02 |
| Deposits/Credits | 16,780.84 |
| Withdrawals/Debits | - 12,147.88 |
| **Ending balance on 8/31** | **$32,555.98** |
| Average ledger balance this period | $23,846.48 |

Account number: ████ 1383

**MOUNTAIN INVESTMENTS, LLC**
**DEBTOR IN POSSESSION**
**CH.11 CASE#16-50906 (NCA)**

*California account terms and conditions apply*

For Direct Deposit use
Routing Number (RTN):  121042882

For Wire Transfers use
Routing Number (RTN):  121000248

**Overdraft Protection**
This account is not currently covered by Overdraft Protection.  If you would like more information regarding Overdraft Protection and eligibility requirements please call the number listed on your statement or visit your Wells Fargo store.

(114)
Sheet Seq = 0372878
Sheet 00001 of  00003



## Transaction history

| Date | Check Number | Description | Deposits/ Credits | Withdrawals/ Debits | Ending daily balance |
|---|---|---|---|---|---|
| 8/1 | | Online Transfer From Noble M Preferred Checking xxxxxx6812 Ref #Ib06Mbfchg on 08/01/19 | 1,222.35 | | |
| 8/1 | | Online Transfer to Noble M Preferred Checking xxxxxx6812 Ref #Ib06Mbfgs9 on 08/01/19 | | 2,000.00 | 27,145.37 |
| 8/2 | | Stop Payment Fee | | 31.00 | |
| 8/2 | | Recurring Payment authorized on 07/31 Apl*Itunes.Com/Bil 866-712-7753 CA S589213124836023 Card 7458 | | 0.99 | 27,113.38 |
| 8/5 | | Purchase Return authorized on 08/02 Apl* Itunes.Com/Bi 866-712-7753 CA S629215543821511 Card 7458 | 3.99 | | |
| 8/5 | | Bill Pay Monterey City Disposal, Inc Recurring x51415 on 08-05 | | 13.00 | |
| 8/5 | | Bill Pay American Water Recurring Xxxxxxxxxxx89947 on 08-05 | | 119.80 | |
| 8/5 | | Bill Pay Verizon Wireles on-Line xxxxxxxxxx00001 on 08-05 | | 120.00 | |
| 8/5 | | Bill Pay Pacific Gas & El on-Line xxxxxx92149 on 08-05 | | 163.49 | |
| 8/5 | | Purchase authorized on 08/03 Coast Ace Hdwe Pacific Grove CA S309216035940926 Card 7458 | | 13.03 | 26,688.05 |
| 8/6 | | Recurring Payment authorized on 08/05 D J*Wall-St-Journa 800-568-7625 MA S589218178537784 Card 7458 | | 38.99 | |
| 8/6 | | Bill Pay Fieldcrest at LA Recurring Xxxxxxxxdc-01 on 08-06 | | 72.00 | |
| 8/6 | | Bill Pay Las Palmas Maste Recurring xx13-57 on 08-06 | | 110.00 | |
| 8/6 | | Bill Pay Fay Servicing Recurring xx27187 on 08-06 | | 311.51 | |
| 8/6 | | Bill Pay Specialized Loan Servicing Sls Recurring xxxxx10719 on 08-06 | | 557.00 | |
| 8/6 | | Bill Pay Isaoa Atima Recurring xxxxx91112 on 08-06 | | 3,336.75 | |
| 8/6 | | Online Transfer to Noble M Preferred Checking xxxxxx6812 Ref #Ib06N3Xmfd on 08/06/19 | | 3,336.75 | 18,925.05 |
| 8/7 | | Recurring Payment authorized on 08/06 Liberty Mutual Rec 888-398-8924 MA S309218267581469 Card 7458 | | 27.50 | |
| 8/7 | | Bill Pay California American Water - Pg on-Line Xxxxxxxxxxx02642 on 08-07 | | 52.00 | |
| 8/7 | | Bill Pay Comcast Cable CO on-Line Xxxxxxxxxxx32531 on 08-07 | | 74.00 | |
| 8/7 | | Bill Pay California Water on-Line xxxxx65921 on 08-07 | | 131.28 | |
| 8/7 | | Bill Pay Comcast Pg on-Line Xxxxxxxxxxx64340 on 08-07 | | 232.52 | |
| 8/7 | | Purchase authorized on 08/07 Coast Ace Hdwe Pacific Grove CA P00589219651871558 Card 7458 | | 34.76 | 18,372.99 |
| 8/8 | | Bill Pay Payment Return on 08-08 | 3,336.75 | | |
| 8/8 | | Card Final Credit 20801190176 | 109.97 | | |
| 8/8 | | Quickbooks Banking | | 14.95 | |
| 8/8 | | Recurring Payment authorized on 08/07 Theeconomist Newsp Mercedesramos NY S389219490223370 Card 7458 | | 55.00 | |
| 8/8 | | Purchase authorized on 08/07 76 - Sei 37983 Monterey CA S589219628441362 Card 7458 | | 63.06 | 21,686.70 |
| 8/9 | | Purchase authorized on 08/08 Apl*Itunes.Com/Bil 866-712-7753 CA S309220317337332 Card 7458 | | 4.99 | |
| 8/9 | 1192 | Check | | 650.00 | 21,031.71 |
| 8/12 | | Bill Pay Verizon Wireles Recurring xxxxxxxxxx00001 on 08-12 | | 59.10 | |
| 8/12 | | Recurring Payment authorized on 08/11 Experian* Credit R 479-3436237 CA S389223457736973 Card 7458 | | 24.99 | 20,947.62 |
| 8/13 | | Recurring Payment authorized on 08/12 Intuit *Quickbooks 800-446-8848 CA S469224383689155 Card 7458 | | 20.00 | |
| 8/13 | | Bill Pay Waste Management Recurring xxxxxxxxxx05271 on 08-13 | | 55.00 | 20,872.62 |
| 8/14 | | Purchase authorized on 08/12 Paypal *Netflix.CO 402-935-7733 CA S309225163115440 Card 7458 | | 12.99 | |
| 8/14 | | Purchase authorized on 08/14 Monterey Fuel Monterey CA P0000000874202523 Card 7458 | | 65.33 | 20,794.30 |
| 8/19 | | Purchase authorized on 08/16 Amz*The Washington Help@Washpost DC S309228687301087 Card 7458 | | 10.00 | 20,784.30 |
| 8/20 | | Purchase authorized on 08/18 Spartan Ihost 800-371-5029 CA S589231146327749 Card 7458 | | 4.95 | 20,779.35 |
| 8/22 | | Gulf Coast Real Web Pmts 082219 Grqyf1 Michael Noble | 5,301.45 | | |



## Transaction history (continued)

| Date | Check Number | Description | Deposits/ Credits | Withdrawals/ Debits | Ending daily balance |
|---|---|---|---|---|---|
| 8/22 | | Purchase authorized on 08/19 Roku for Hulu LLC 816-272-8107 CA S589232220103650 Card 7458 | | 11.99 | |
| 8/22 | | Purchase authorized on 08/20 76 - Sei 37983 Monterey CA S589233078028131 Card 7458 | | 89.26 | |
| 8/22 | | Bill Pay Comcast Pg Recurring Xxxxxxxxxx64340 on 08-22 | | 172.00 | 25,807.55 |
| 8/26 | | Recurring Payment authorized on 08/23 Apl*Itunes.Com/Bil 866-712-7753 CA S589235733650500 Card 7458 | | 2.99 | |
| 8/26 | | Recurring Payment authorized on 08/24 Linkedin-403*41419 Lnkd.IN/Bill CA S309236742808859 Card 7458 | | 29.99 | |
| 8/26 | | Purchase authorized on 08/26 The UPS Store #3007 79 Monterey CA P00000000170171981 Card 7458 | | 19.90 | 25,754.67 |
| 8/28 | | Edeposit IN Branch/Store 08/28/19 05:01:21 Pm 1160 Forest Ave Pacific Grove CA 7458 | 1,250.00 | | |
| 8/28 | | Recurring Payment authorized on 08/26 Google*Google Stor Internet CA S389238777688247 Card 7458 | | 2.99 | 27,001.68 |
| 8/29 | | California-Ameri Payment 082919 210021789947 Michael Noble | | 2.03 | 26,999.65 |
| 8/30 | | Edeposit IN Branch/Store 08/30/19 01:55:55 Pm 447 Canyon Del Rey Blvd Del Rey Oaks CA 7458 | 2,189.33 | | |
| 8/30 | | Online Transfer From Noble M Preferred Checking xxxxxx6812 Ref #Ib06Rhgzc6 on 08/30/19 | 3,336.00 | | |
| 8/30 | | Online Transfer From Noble M Preferred Checking xxxxxx6812 Ref #Ib06Rk6Ckr on 08/30/19 | 31.00 | | 32,555.98 |
| **Ending balance on 8/31** | | | | | **32,555.98** |
| **Totals** | | | **$16,780.84** | **$12,147.88** | |

*The Ending Daily Balance does not reflect any pending withdrawals or holds on deposited funds that may have been outstanding on your account when your transactions posted. If you had insufficient available funds when a transaction posted, fees may have been assessed.*

### Summary of checks written *(checks listed are also displayed in the preceding Transaction history)*

| Number | Date | Amount |
|---|---|---|
| 1192 | 8/9 | 650.00 |

### Monthly service fee summary

For a complete list of fees and detailed account information, see the Wells Fargo Account Fee and Information Schedule and Account Agreement applicable to your account (EasyPay Card Terms and Conditions for prepaid cards) or talk to a banker. Go to wellsfargo.com/feefaq for a link to these documents, and answers to common monthly service fee questions.

| Fee period 08/01/2019 - 08/31/2019 | Standard monthly service fee $14.00 | You paid $0.00 | |
|---|---|---|---|
| **How to avoid the monthly service fee** | Minimum required | This fee period | |
| Have any **ONE** of the following account requirements | | | |
| · Average ledger balance | $7,500.00 | $23,846.00 | ☑ |
| · A qualifying transaction from a linked Wells Fargo Merchant Services account | 1 | 0 | ☐ |
| · Total number of posted debit card purchases or posted debit card payments of bills in any combination | 10 | 20 | ☑ |
| - Enrollment in a linked Direct Pay service through Wells Fargo Business Online | 1 | 0 | ☐ |
| · Combined balances in linked accounts, which may include | $10,000.00 | | ☑ |
|   - Average ledger balances in business checking, savings, and time accounts | | | |
|   - Most recent statement balance in eligible Wells Fargo business credit cards and lines of credit, and combined average daily balances from the previous month in eligible Wells Fargo business and commercial loans and lines of credit | | | |
|   - For complete details on how you can avoid the monthly service fee based on your combined balances please refer to page 7 of the Business Account Fee and Information Schedule at www.wellsfargo.com/biz/fee-information | | | |



---

***Monthly service fee summary (continued)***

The Monthly service fee summary fee period ending date shown above includes a Saturday, Sunday, or holiday which are non-business days. Transactions occurring after the last business day of the month will be included in your next fee period.

wx/wx

---

## Account transaction fees summary

| Service charge description | Units used | Units included | Excess units | Service charge per excess units ($) | Total service charge ($) |
|---|---|---|---|---|---|
| Cash Deposited ($) | 0 | 7,500 | 0 | 0.0030 | 0.00 |
| Transactions | 11 | 200 | 0 | 0.50 | 0.00 |
| **Total service charges** | | | | | **$0.00** |



## General statement policies for Wells Fargo Bank

■ **Notice:** Wells Fargo Bank, N.A. may furnish information about accounts belonging to individuals, including sole proprietorships, to consumer reporting agencies. If this applies to you, you have the right to dispute the accuracy of information that we have reported by writing to us at: Overdraft Collections and Recovery, P.O. Box 5058, Portland, OR 97208-5058.

You must describe the specific information that is inaccurate or in dispute and the basis for any dispute with supporting documentation. In the case of information that relates to an identity theft, you will need to provide us with an identity theft report.

### Account Balance Calculation Worksheet

1. Use the following worksheet to calculate your overall account balance.

2. Go through your register and mark each check, withdrawal, ATM transaction, payment, deposit or other credit listed on your statement. Be sure that your register shows any interest paid into your account and any service charges, automatic payments or ATM transactions withdrawn from your account during this statement period.

3. Use the chart to the right to list any deposits, transfers to your account, outstanding checks, ATM withdrawals, ATM payments or any other withdrawals (including any from previous months) which are listed in your register but not shown on your statement.

**ENTER**

**A.** The ending balance
shown on your statement . . . . . . . . . . . . . . . . . . . . . $ _____

**ADD**

**B.** Any deposits listed in your                $ _____
register or transfers into               $ _____
your account which are not             $ _____
shown on your statement.             + $ _____

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **TOTAL** $ _____

**CALCULATE THE SUBTOTAL**
(Add Parts A and B)

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **TOTAL** $ _____

**SUBTRACT**

**C.** The total outstanding checks and
withdrawals from the chart above . . . . . . . . . . . . - $ _____

**CALCULATE THE ENDING BALANCE**
(Part A + Part B - Part C)
This amount should be the same
as the current balance shown in
your check register . . . . . . . . . . . . . . . . . . . . . . $ . _____

| Number | Items Outstanding | Amount |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
| **Total amount** | **$** |  |

©2010 Wells Fargo Bank, N.A. All rights reserved. Member FDIC. NMLSR ID 399801

Sheet Seq = 0372880
Sheet 00003 of  00003

**Exhibit C –** Liquidation Analysis

*Plan Proponent's Estimated Liquidation Value of Assets*

**Assets**

| | | |
|---|---|---|
| a. | Cash on hand | $32,555.98 |
| b. | Accounts receivable | $0.00 |
| c. | Inventory | $0.00 |
| d. | Office furniture & equipment | $0.00 |
| e. | Machinery & equipment | $0.00 |
| f. | Automobiles | $0.00 |
| g. | Building & Land | $0.00 |
| h. | Customer list | $0.00 |
| i. | Investment property (such as stocks, bonds or other financial assets) | $0.00 |
| j. | Lawsuits or other claims against third-parties | $0.00 |
| k. | Other intangibles (such as avoiding powers actions) | $0.00 |
| l. | Real properties (92% of value) | $1,105,380.00 |

| | |
|---|---|
| ***Total Assets at Liquidation Value*** | **$1,137,935.98** |

**Less:**

| | |
|---|---|
| Secured creditors' recoveries | $1,983,814 |

**Less:**

| | |
|---|---|
| Chapter 7 trustee fees and expenses | $0.00 |

**Less:**

| | |
|---|---|
| Chapter 11 administrative expenses | $45,650.00 |

**Less:**

| | |
|---|---|
| Priority claims, excluding administrative expense claims | $4,247.60 |

**Less:**

| | |
|---|---|
| Balance for unsecured claims | $0.00 |

| | |
|---|---|
| ***Percentage of Claims Which Unsecured Creditors Will Receive or Retain under the Plan:*** | 3.9% |

**Exhibit D** – Cash on hand on the effective date of the Plan

| | |
|---|---|
| **Cash on hand on effective date of the Plan**: | $32,555.98 |
| | (balance as of 8/31/19) |
| *Less* – | |
| Amount of administrative expenses payable on effective date of the Plan | -15,650.00 |
| Amount of statutory costs and charges | **- 0.00** |
| Amount of cure payments for executory contracts | - 0.00 |
| Other Plan Payments due on effective date of the Plan | - 2,081.22 |
| Balance after paying these amounts............... | $14,824.76 |

The sources of the cash Debtor will have on hand by the effective date of the Plan are estimated as follows:

| | |
|---|---|
| $32,555.98 | Cash in Debtor's bank account as of 8/31/19 |
| + | Additional cash Debtor will accumulate from net earnings between now and effective date of the Plan [state the basis for such projections] |
| + | Borrowing [separately state terms of repayment] |
| + | Capital Contributions |
| + | Other |
| $32,555.98 | Total |

Case: 16-50906   Doc# 255   Filed: 09/26/19   Entered: 09/26/19 16:53:12   Page 38 of 40

**Exhibit E –** Projections of Cash Flow and Earnings for Post-Confirmation Period

| MONTH | GROSS RENT | Total Property Mgt Commission & Maintenance | Property Management Commission 9% | Maintenance Costs | Net Rent before Mortgage, Tax, & Ins. | Monthly Insurance Cost Reduced $100/mth to account for deposit) | Est. Monthly Tax Cost | Total Estimated. Mortgages, Tax & Insurance Cost | Net Profit for Month |
|---|---|---|---|---|---|---|---|---|---|
| January | $ 6,185 | $ 1,330 | $ 557 | $ 773 | $ 4,855 | $ 402 | $ 528 | $ 2,607 | $ 2,248 |
| February | $ 6,185 | $ 1,330 | $ 557 | $ 773 | $ 4,855 | $ 402 | $ 528 | $ 2,607 | $ 2,248 |
| March | $ 6,185 | $ 1,330 | $ 557 | $ 773 | $ 4,855 | $ 402 | $ 528 | $ 2,607 | $ 2,248 |
| April | $ 6,185 | $ 1,330 | $ 557 | $ 773 | $ 4,855 | $ 402 | $ 528 | $ 2,607 | $ 2,248 |
| May | $ 6,185 | $ 1,330 | $ 557 | $ 773 | $ 4,855 | $ 402 | $ 528 | $ 2,607 | $ 2,248 |
| June | $ 6,185 | $ 1,330 | $ 557 | $ 773 | $ 4,855 | $ 402 | $ 528 | $ 2,607 | $ 2,248 |
| July | $ 6,185 | $ 1,330 | $ 557 | $ 773 | $ 4,855 | $ 402 | $ 528 | $ 2,607 | $ 2,248 |
| August | $ 6,185 | $ 1,330 | $ 557 | $ 773 | $ 4,855 | $ 402 | $ 528 | $ 2,607 | $ 2,248 |
| September | $ 6,185 | $ 1,330 | $ 557 | $ 773 | $ 4,855 | $ 402 | $ 528 | $ 2,607 | $ 2,248 |
| October | $ 6,185 | $ 1,330 | $ 557 | $ 773 | $ 4,855 | $ 402 | $ 528 | $ 2,607 | $ 2,248 |
| November | $ 6,185 | $ 1,330 | $ 557 | $ 773 | $ 4,855 | $ 402 | $ 528 | $ 2,607 | $ 2,248 |
| December | $ 6,185 | $ 1,330 | $ 557 | $ 773 | $ 4,855 | $ 402 | $ 528 | $ 2,607 | $ 2,248 |
| Total Ms. Income | $ 74,220 | $ 15,961 | $ 6,685 | $ 9,276 | $ 58,259 | $ 4,824 | $ 6,336 | $ 31,284 | $ 26,975 |

The rent protections above do not reflect any vacancies which reduce the monthly income by **10-12%**

*Therefore the average net monthly income is $1,800 - $2,000/mth*